154

**Pennsylvania Waste Industries Association v. Monroe
County Municipal Waste Management Authority**

C.P. of Monroe County, No. 6877 CIVIL 2012.

*George Westervelt* and *Maryanne Starr Garber*, for plaintiff.

*John B. Dunn*, for defendant.

WILLIAMSON, *J.*, January 11, 2013—This opinion shall supplement the order entered December 13, 2012, which denied Pennsylvania Waste Industries Association's ("PWIA") request for Declaratory Relief declaring that the Request for Proposals ("RFP") of the Monroe County Municipal Waste Management Authority ("authority"), is preempted by Act 101, Act 90, and/or that it is ultra vires of any enabling legislation, Specifically, PWIA sought relief declaring that the authority could not impose a tipping fee as sought in the RFP and resulting purchase agreement.

The authority is in the process of preparing a major management plan revision for a new ten (10) year planning period for collection and disposal of municipal solid waste as required by the Municipal Waste Planning

and Recycling Act of 1988, 53 P.S. Section 4000.101 et. seq. (Act 101). That ten (10) year planning period begins in 2015. As part of that planning process, the authority is soliciting bids for the purchase of waste disposal capacity for all municipal solid waste generated in Monroe County for the next ten (10) year planning period. The bids are solicited through a request for proposal process. The RFP specifically requests proposals from landfills, incinerators, or waste transfer stations ("facility") for the authority to purchase guaranteed disposal capacity by way of "air space" or "through-put capacity". This is essentially the purchase of available space for disposal of the county's solid waste for the term of the contract. The waste capacity, or "air space", would be dedicated for the use of municipal solid waste generated in Monroe County for the term of the contract to assure a guarantee of disposal capacity. The authority would then charge waste haulers a per ton fee for waste disposal at the contracted waste disposal facility for the air space owned by the authority. The fees would cover the contract price per ton the facility charges to the authority and the authority's reasonable costs. The fee could be charged by the facility and remitted to the authority after the facility deducts its contracted portion, or collected in full by the authority.

The authority cites the Municipality Authorities Act of 1945 (as amended), 53 Pa. C.S.A. §5601 ("MAA") as specifically authorizing these undertakings. The authority states it will acquire property rights and charge reasonable fees for the use of such property rights. The authority states such action is authorized under the MAA.

PWIA is a private trade association of private landfill owners and operators doing business in Pennsylvania.

PWIA asserts that the RFP and proposed tipping fee thereunder, is preempted by Act 101, and at odds with two (2) prior cases, *IESI Bethlehem Landfill vs. City of Lehigh*, 887 A.2d 1289 (Pa. Cmwlth. 2005) and *PA Independent Waste Haulers Ass'n. vs. City of Northumberland*, 885 A.2d 1106 (Pa. Cmwlth. 2005). Specifically, PWIA cites the two (2) Commonwealth Court cases as legal precedent that counties or their delegated municipal authorities are preempted under Act 101 from charging administrative fees. PWIA states that to enact consistency statewide, with regard to fees charged for municipal solid waste disposal, Act 101 prevents municipalities from charging fees on waste disposal that goes toward recycling programs or to subsidize other municipal expenses. Instead, the legislature set a fee schedule in which a recycling fee is added to costs of disposal of all municipal solid waste in Pennsylvania that is remitted by the disposal facility to the Commonwealth for eventual distribution back to counties that meet certain guidelines. PWIA argues that no other fees for recycling programs, or any other expenses, can be charged by counties or authorities on their waste disposal contracts.

PWIA brings this action pursuant to the Declaratory Judgment Act of 42 Pa. C.S.A. 7531 and Pa.R.C.P. 1601, et seq. It seeks a determination that the authority is preempted from charging a tipping fee, and that it is barred from considering a facility's willingness to collect and remit a tipping fee in order to be a "designated facility". In the alternative, PWIA requests a determination that the authority is without legal basis to charge a tipping fee, or to only contract with a facility that will collect and remit the tipping fee.

The authority, unlike a county or a municipality, is governed by the MAA, as a separate and distinct political subdivision. Under section 5607 (d) (7) of the MAA, a municipal authority is authorized to provide "[f]acilities and equipment for the collection, removal, or disposal of ashes, garbage, rubbish and other refuse materials by incineration, landfill, or other methods." 53 Pa. C.S.A. § 5607 (a)(7). Section 5607 (d)(9) grants the power to a municipal authority to charge reasonable rates and other charges to cover its expenses for the construction, improvement, repair, maintenance and operation of its facilities, properties and programs, and to recover the expenses of providing administrative services. 53 Pa. C.S.A. §5607 (d)(i). Section 5607 (d)(13) empowers an authority "[t]o make contracts of every name and nature and to execute all instruments necessary or convenient for the carrying out of its business." 53 Pa. C.S.A. § 5607 (d) (13). Finally, section 5615 (a) states an authority, "shall have the power to acquire by purchase or eminent domain proceedings either the fee or the rights, title, interest or easement in such lands, water, and water rights as the authority deems necessary for any purpose of this chapter." 53 Pa. C.S.A. §5615 (a).

Here, the authority seeks guaranteed space to dispose of municipal solid waste, and to charge reasonable fees to cover its expenses, by soliciting an RFP to acquire airspace. The authority wants to acquire certain rights to land, by purchasing airspace above the land, at a waste disposal facility. The proposed RFP states the authority would retain rights to the air space, which could presumably be sold back to the facility if not used. This court finds that the purchase of the airspace is an interest in land that the

authority seeks to acquire, under 53 Pa. C.S.A. §5607(a) (7), 5607 (d)(4) and 5615 (a).

The authority also seeks to enter into contracts to conduct its business, which the Act allows. *See* 53 Pa. C.S.A. §5607 (d) (13). Finally, the fees charged are for covering expenses allowed by the Act. *See* 53 Pa. C.S.A. 5607 (d) (9). Although it is a novel approach to contract for air space in landfills, by actually acquiring rights to land itself, and to charge a fee to cover that cost of space and expenses of the authority, it is not for this court to determine if anyone will actually contract with the authority as proposed. However, the RFP conforms to the powers authorized under the MAA.

PWIA asserts in its request for declaratory relief, that the RFP requires fees to be paid to the authority that are for recycling programs or other expenses of the authority. The PWIA contends the RFP contains a cost collection method by the authority that also covers recycling costs of the Authority. PWIA also admits the cost collection method will pay operating costs and debt service of the authority. As a result, PWIA contends the RFP violates Act 101 and the holdings of the *IESI Bethlement Landfill* and *Pennsylvania Independent Waste Haulers Assn.* cases, in part, because recycling fees will be charged by the authority. This is not supported by the evidence presented at trial.

The fees to be charged by the authority under the RFP are for the authority's Integrated Waste Management System which they propose in their next ten (10) year plan. There is no language in the RFP to suggest fees charged by the authority will be utilized to fund the authority's recycling

programs. Other than a listing of the services the authority provides in the summary section of the RFP, which includes recycling programs, there is no mention of the fees to be charged going to fund the authority's recycling program. The RFP sets forth the billing and operating costs method sought by the authority, and there is no specific fee for recycling programs. The Commonwealth Court in *IESI Bethlehem Landfill* and the *Pennsylvania Independent Waste Haulers Assn.* specifically addressed tipping fees charged directly for, or used in part, for recycling programs as being preempted by Act 101.

Our review of Act 101 shows that county governments are now mandated to establish county-wide programs for recycling and waste stream reduction. The percentage goals are currently a 35 percent reduction in waste stream. To meet this mandate and goals, counties have instituted recycling programs. Act 101 sets forth certain requirements pertaining to recycling program fees collected on solid waste disposal. The act imposes a $2 per ton fee on all solid waste processed that originates from each county. 53 Pa. C.S.A. § 4000.701. All such fees are paid to the Commonwealth and placed in a Recycling Fund. 53 Pa. C.S.A. § 4000.706. At least 70% of the fees are then expended by the Commonwealth through grants to fund recycling programs. 53 Pa. C.S.A. §4000.706 (c)(1). However, these grants do not necessarily distribute 70% of the funds collected back to the county generating the municipal solid waste. Monroe County generates about 160,000 tons of municipal solid waste per year, creating approximately $320,000 collected under Act 101 and forwarded to the Commonwealth. Monroe County only receives a fraction of this amount back in grants for their

recycling programs. Per Act 101, counties must fund the difference in costs to operate recycling programs from sources other than waste disposal tipping fees.

PWIA argues that the RFP provides a disguised charge by the authority to fund its recycling programs. This was not supported by the evidence. James Lambert, executive director of the authority, testified the fees the authority will receive under the RFP will fund the Integrated Waste Management System of the authority. The authority will charge a reasonable fee to cover its administrative and operational costs for its solid waste programs. A large percentage of these costs are debt service from a failed plan to construct an authority-owned solid waste incinerator, as well as offices and land owned by the authority.

Mr. Lambert testified the authority will separate the Act 101 recycling costs from the solid waste costs, including the accounting and management functions. All recycling costs will be funded through recycling grants from the Commonwealth, and fees generated directly from the recycling programs that are paid by private users. If that cannot be done, Mr. Lambert stated the authority would stop the recycling programs or seek alternate avenues for revenue. The authority's recycling program accepts recycling from other municipalities and private haulers, who pay for such services, and Mr. Lambert believes the program can be self-sufficient with no need to charge a separate fee or use any funds from waste disposal tipping fees to fund the recycling programs. Mr. Lambert's testimony was credible. In any event, until such time as an issue arises where the authority is using fees collected from this RFP to fund recycling programs, the issue is not ripe for declaratory relief, because the RFP does not claim

to be charging fees to fund recycling.

PWIA also asserts that the authority is preempted from generating any revenue other than as set forth in Act 101. In support thereof, PWIA cites the decision in *Pennsylvania Waste Haulers Assn.*, supra, and *IESI Bethlehem Landfill*, supra. In both cases, the parties admitted the administrative fees being charged were used to fund county recycling programs. Both cases specifically addressed and held that county administrative fees imposed to help fund recycling programs were preempted by Act 101. In *Pennsylvania Waste Haulers Assn.*, the court held that municipal powers including authorities, are preempted by Act 101 with respect to fees for recycling programs. The case did not review whether or not Act 101 preempts fees charged to fund other solid waste operations. Likewise, the actual holding in *IESI Bethlehem Landfill*, mirrored the *Pennsylvania Waste Haulers Assn.* holding, that municipalities cannot charge administrative fees from waste disposal facilities to fund recycling programs.

The fee set forth to be collected under Act 101 is a fee for promoting recycling and is specifically enumerated as being a "recycling fee". *See* 53 Pa. C.S.A. § 4000.701. The cases cited by PWIA address fees charged for recycling in excess of this fee mandated by 53 Pa. C.S.A. § 4000.701. PWIA asserts the case law and Act 101 prohibit collection of *all* administrative fees because Lehigh County, in the *IESI Bethlehem* case, charged a fee to fund their *planning* and *recycling programs*. However, the Commonwealth Court specifically held the fee collected by Lehigh County was preempted by Act 101 because the fee went to fund recycling programs. Neither of the cases cited, nor Act 101, specifically address fees charged for administrative costs of solid waste disposal. Therefore, this court cannot

find that the RFP as drafted violates or is preempted by Act 101, or is contrary to the cited cases.

PWIA also argues that the proposed RFP and tipping fee violated the MAA. PWIA contends that the purchase of airspace or through-put capacity from waste disposal facilities, is not an interest in real property. This issue was already discussed in this opinion, and we find that the proposed purchase of airspace or through-put capacity does involve an interest in real property under the MAA. PWIA further argues that the authority's proposal to maintain the right to set the fees charged to waste haulers for disposal, puts the authority in direct competition with private enterprises. PWIA asserted that the RFP would violate 53 Pa. C.S.A. § 5607 (b)(2), which places limitations on the activities of a municipal authority. However, this court was not convinced by the testimony presented that the RFP would cause the authority to unnecessarily burden or interfere with existing business as set forth in 5607 (b)(2). Witnesses for PWIA were concerned they would lock into a price with the Authority and then be unable to negotiate later with individual waste haulers to give lower rates based upon the amount of waste brought to the facility by that hauler.[1]

However, a facility is not obligated to submit a bid under the RFP. If the bidding on the RFP is not satisfactory to the facility, they can avoid this business venture. Furthermore, the facility could submit a maximum bid under the RFP,

---

1. For example, a PWIA witness testified that they currently negotiate lower or higher waste disposal fees with individual haulers dependng upon the amount of waste brought to a facility by that hauler. In other words, discounts for business from the high volume haulers. Any tipping fees to municipalities remain the same, but the facilities raise or lower their fees, since they collect the total fee charged, and remit tipping fees and Act 101 fees out of the total.

and reserve the right to charge less than the maximum, should it so choose, thereby creating the opportunity to charge lower overall costs to a hauler in the same manner facilities do now. In any event, the purchase of airspace for disposal of solid waste would be similar to leasing or owning land and establishing a county or authority- owned landfill, incinerator, or waste transfer station, all of which are permitted. Such municipal-owned facilities would also compete with private enterprises under PWIA's scenario.

PWIA seeks, in the alternative, a finding that the proposed RFP is ultra vires, or without any legal basis. This court has previously set forth the citation under the MAA for the authority to proceed as proposed in the RFP. The authority has the right to enter into contracts, acquire interests or rights in real property, and charge reasonable fees to pay for the authority's expenses under 53 Pa. C.S.A. §5601 et seq. Therefore, the actions proposed by the authority in assessing a tipping fee are not ultra vires of any legal basis.

For these reasons, the court entered the order dated December 13, 2012 in this matter denying PWIA's request for declaratory relief.